IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| GARY NEWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| OCWEN LOAN SERVICING, LLC; | ) |
| DEUTSCHE BANK TRUST | )   1:15CV557 |
| COMPANY AMERICAS; | ) |
| AMERICAN MORTGAGE | ) |
| ASSOCIATES, L.P.; AND JOHN | ) |
| AND JANE DOES (1 through 25), | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on a Motion to Dismiss and Cancel Lis Pendens filed by Defendants Ocwen Loan Servicing, LLC ("Ocwen") and Deutsche Bank Trust Company Americas ("Deutsche Bank") (collectively "Defendants").[1] (Defs.' Mot. ("Motion")[Doc. #7].) Plaintiff Gary Newell, proceeding pro se, has responded in opposition to the Motion. [Doc. #12.] For the reasons set out below, the Defendants' Motion will be GRANTED.

I.

Mr. Newell filed the present action in North Carolina State Court[2] on June 8, 2015, and Defendants removed to this court. [Doc. #1.] Mr. Newell alleges that

---

[1] Plaintiff also named "American Mortgage Associates, L.P." and "John and Jane Does (1 through 25)" as Defendants in this matter. However, the record indicates that no service was ever made to these parties. [Doc. #3.] Therefore, any action against these parties will be dismissed.

[2] The original Complaint (15CVS3399) was filed on June 8, 2015 in Forsyth County Superior Court.

Case 1:15-cv-00557-NCT-JEP   Document 13   Filed 03/31/16   Page 1 of 7

on or about March 19, 1998, Defendant Ocwen approved a loan to him for $650,000 at an annual rate of 5.875%. (Compl. [Doc. #2] at 2.) However, Mr. Newell alleges that Defendants provided the funds in the form of a check instead of federal reserve notes or coin and only provided an estimated 5% of the face value of the loan in "actual lawful money" (id.) which he refers to as being federal reserve notes, coin or silver. Mr. Newell asserts that Defendants' description of this loan ("lending lawful money of the United States") was a false representation, because the loan check written by Defendants was not backed or redeemable by Federal Reserve Notes, coins, or any other lawful money. (Id. at 3-4.) Mr. Newell also alleges that because only an estimated 5% of the loan value was in the form of "lawful money", Defendants charged an interest rate "twenty times greater than what was authorized in the contract." (Id. at 4.) Based on these allegations, Mr. Newell asserts four causes of action: breach of contract, fraud and racketeering, usury and racketeering, and violations of truth in lending laws. (Id. at 5-7.)

II.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Aschroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id.

Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[ ] the[ ] claims across the line from conceivable to plausible." Twombly, 500 U.S. at 555, 570; see also Iqbal, 556 U.S. at 678. Under Iqbal, the court performs a two-step analysis. First, it separates factual allegations from allegations not entitled to the assumption of truth (i.e., conclusory allegations, bare assertions amounting to nothing more than a "formulaic recitation of the elements"). Iqbal, 556 U.S. at 680-81. Second, it determines whether the factual allegations, which are accepted as true, "plausibly suggest an entitlement to relief." Id. at 681.

When a party is proceeding pro se, that party's filings are "to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation omitted). It is important to note that, in the case of a pro se plaintiff, the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint).

III.

Mr. Newell's claims stem from his assertion that his loan was "not backed by lawful money". Giving his claims a liberal construction, the contract claim is based upon his receiving all but an estimated 5% of the $ 650,000 mortgage

3

funds in the form of a check instead of cash, coin or gold. His fraud claim is based upon the asserted "misrepresentation" that funding would be in the form of lawful money when it was actually provided in the form of a check. The racketeering allegation is based upon Defendants' collection of Mr. Newell's mortgage payments by wire and mail; the usury claim upon applying the mortgage loan rate of 5.875% to the estimated 5% advanced in "lawful money" instead of the $650,000 total loan amount. The Truth in Lending claim is based upon asserted non-disclosure of the information: "Plaintiff was the depositor and that Defendant(s) risked none of their assets in the exchange, or any assets of other depositors."

The Complaint contains no factual assertions supporting a reasonable inference that Mr. Newell did not receive the total value he and Defendants had agreed upon. A properly drawn check is a negotiable instrument recognized by law to be equivalent as tender to cash or coin. There is no assertion that the check in question was not properly drawn or in an amount which, added to the estimated 5% "lawful money", was less than $650,000 or that it was dishonored. The Complaint states no claim for breach of contract.

The Complaint contains no factual assertions supporting a reasonable inference that because funding was in the form of a check, Mr. Newell was misled to his detriment and, thereby, suffered harm. He states the transaction took place in 1998 and he made mortgage payments totaling $1,107,720. He alleges no facts supporting reasonable inferences that he did not acquire the property for which the mortgage was acquired or that he paid more than agreed because tender

4

included a check, instead of what he considers "lawful money". There is no suggestion why he waited until 2015 to bring this action. The Complaint states no claim for fraud.

Because the racketeering claim is based upon collection by wire and mail of a mortgage debt which cannot from any reasonable inferences be argued improper and because the usury claim is based upon applying the total amount of interest to only the estimated 5% of $650,000, the Complaint states claims for neither.

Mr. Newell's final claim is a violation of the Truth in Lending Act ("TILA"). "TILA requires that a creditor make certain material disclosures at the time the loan is made." Gilbert v. Residential Funding LLC, 678 F.3d 271, 276 (4th Cir. 2012). The undisclosed material facts cited by Mr. Newell are that "Plaintiff was the depositor and that Defendant(s) risked none of their assets in the exchange, or any assets of other depositors." (Compl. [Doc. #2] at 14.) The Complaint does not suggest nor does the Court perceive how this might be a violation of the TILA; and, the claim will be dismissed.

Further, Defendants argue that Mr. Newell's Complaint is "a form complaint based on a meritless legal theory" previously rejected by this court. (Defs.' Mem. [Doc. #8] at 5.) Mr. Newell's Complaint is virtually identical to the complaints filed in both Moser v. Citimortgage, Inc., No. 1:12CV1258, 2013 WL 4519346 (M.D.N.C. Aug. 26, 2013), adopted (M.D.N.C. Sept 27, 2013) and Page v. Select Portfolio Servicing, Inc., No. 1:12CV900, 2013 WL 4679428 (M.D.N.C. Aug. 30,

5

2013), adopted 2013 WL 5462282 (M.D.N.C. Sept. 30, 2013).[3]  The Moser, Page, and present complaints all describe a mortgage transaction and then assert that, because the loan is not backed by "lawful money", defendant(s) breached a contract, committed fraud and racketeering, violated usury laws, and violated theTILA.

The Moser and Page courts dismissed all claims, finding plaintiffs had failed to state any claim upon which relief could be granted, because the underlying legal theory was not sound. Moser, 2013 WL 4519346; Page, 2013 WL 4679428. Although not binding on this Court, the Moser and Page decisions are informative in analyzing Mr. Newell's Complaint.  Both the Moser and Page courts considered and rejected the same arguments currently presented by Mr. Newell.  As the court in Page stated, "[t]he court has not accepted as true the legal theories which constitute the bulk of the complaint in this matter." Page, 2013 WL 4679428 at *3.  Likewise, Mr. Newell's unrecognized legal theory is fatal to each of his claims for relief.

In addition, Mr. Newell offers no suggestion why he waited from 1998 until 2015 to complain about this mortgage transaction or why the statute of limitations did not run many years ago.

---

[3] The only cognizable difference in the three complaints is that the Page plaintiffs did not assert in the fact section that the interest rate was twenty times more than the parties agreed to in their contract.  Despite not including it in the fact section, the Page plaintiffs did include this claim in their usury claim.

6

For the above stated reasons, the Defendants' Motion to Dismiss and Cancel Lis Pendens[4] will be GRANTED.

IV.

IT IS THEREFORE ORDERED that the Defendants' Motion to Dismiss and Cancel Lis Pendens [Doc. #7] is GRANTED and this action is dismissed. This Court will enter contemporaneous judgment with this order.

This the 31st day of March, 2016.

                                                 /s/ N. Carlton Tilley, Jr.
                                     Senior United States District Judge

---

[4] In their Motion to Dismiss and Cancel Lis Pendens, Defendants ask this Court to cancel the "Notice of Common Law Lien" filed by Mr. Newell that purports to place a lien on the property underlying the loan that is the subject of the current action. (Defs.' Mem. [Doc. #8] at 15-16.) Mr. Newell filed a copy of this lien with his complaint. [Doc. #2-1 at 1.] "In North Carolina, lis pendens is a statutory device for providing constructive notice of pending litigation in which the title to real estate is at issue." In re McCormick, 400 B.R. 193, 197 (Bankr. M.D.N.C. 2008). Although not titled lis pendens, Defendants assert that, in essence, Mr. Newell's filing of the lien was a notice of lis pendens and should be treated as such by this Court. [Doc. #8 at 15-16.] The "Notice of Common Law Lien" filed by Mr. Newell included some of the requirements of a lis pendens. See N.C. Gen. Stat. § 1-116(b). For example, the lien was filed after the current action and contains language that it was filed with this action. [Doc. #2-1 at 1.] These facts support a finding that, in the present action, it is appropriate to treat Mr. Newell's lien filing in the same fashion as a notice of lis pendens. Because this action is not an action in which the title to real estate is at issue, but instead an action in contract and tort, this Court will cancel the "Notice of Common Law Lien" under its authority to do so. See generally Gilley v. Shoffner, 345 F. Supp. 2d 563 (M.D.N.C. 2004).